```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF WISCONSIN
```

STEPHEN E. ALEXANDER,

                        Plaintiff,

    v.                                                      OPINION & ORDER

ANTHONY MELI and KEITH IMMERFALL,            17-cv-585-jdp

                        Defendants.

        Pro se plaintiff Stephen E. Alexander, an inmate incarcerated at the Waupun Correctional Institution (WCI), is proceeding on First Amendment retaliation and Fourteenth Amendment equal protection claims against defendants Anthony Meli and Keith Immerfall, WCI officials. Alexander alleges that defendants reclassified Alexander to "involuntary unassigned" status, causing Alexander to lose his prison job, after Alexander successfully defended a conduct report accusing him of stealing from the canteen. Dkt. 12. Alexander now moves for an order compelling five discovery responses. Dkt. 22. I will grant his motion in part.

        First, in his interrogatory no. 3, Alexander seeks the security camera footage related to the conduct report. Defendants object, explaining that some of the footage was not saved and that allowing Alexander to review the saved footage would pose a security risk—he would know which areas are within the camera's view and which are not. In lieu of the footage, defendants provided Alexander with Immerfall's declaration, which describes the footage (both the saved and unsaved portions) and "provides Alexander the necessary information he needs to know: the basis upon which Defendants assert to have terminated him." Dkt. 23, at 5. The parties

jointly request that I review the saved footage and determine whether it is discoverable.[1] I have done so. Immerfall's description of the saved footage is accurate. The footage is relevant to Alexander's claims, but only tangentially: it appears that the factual issues will focus on defendants' actions, which may have been motivated in part by the footage; they will not focus on Alexander's actions as seen in the footage. And Alexander has not explained why he needs the footage, as opposed to an accurate description of the footage. Weighing against disclosure is defendants' rational security concern. So I will not compel defendants to produce the footage to Alexander.

Second, in interrogatory no. 4, Alexander asks defendants to identify each individual involved in the decision to remove Alexander from his prison job. Defendants initially responded to Alexander's request by naming Meli as the sole decision-maker. Alexander argues that the DOC-1408 form recording his removal "reveals several other names." Dkt. 22, at 3. Defendants say it doesn't. The DOC-1408 form bears two "authorizing signatures." *See* Dkt. 24-1. One of the signatures appears to be Meli's. It's unclear who the other signature belongs to—Alexander thinks it's a correctional officer named Kroll. It would appear that the second individual was involved in authorizing Alexander's removal. So I will order defendants to

---

[1] Defendants have submitted the saved footage in camera and under seal. They have provided three segments, two of which they explain are unrelated to Alexander's claims but submitted out of an abundance of caution, because defendants "originally represented to Alexander that there were three video segments saved" before realizing that only one segment was connected to Alexander's claims. Dkt. 23, at 4 n.2. I have reviewed all three segments, which all bear the same date (perhaps accounting for the confusion), and I agree that two appear to be completely unrelated to Alexander's claims. Alexander asks me to sanction defendants for misrepresenting the number of segments saved. I will not do so: defendants were forthcoming with Alexander and the court about their mistake.

identify the second individual who signed the DOC-1408 form and explain that individual's role in the decision-making process.

Third, in interrogatory no. 6, Alexander seeks all information that Meli relied upon when removing Alexander from his prison job. Defendants responded to Alexander's request by explaining that "Alexander's continued employment in the kitchen posed a security and safety risk based on his affiliation with a security threat group and his proven participation in a group effort to conceal and then steal items from the kitchen." Dkt. 22-1, at 6. They also explained that the "WCI Gang Task Force" told Meli that Alexander "was operating in a leadership capacity with his Security Threat Group." *Id.* at 5. Defendants refused to provide any more details, explaining that doing so would pose a security risk. Defendants' security concern is rational, but the information that Alexander seeks here goes to the heart of his claims, so I will grant his motion to compel the production of this information. But I will allow defendants to propose how best to allow Alexander to review the information without compromising the institution's security. To do so, they should submit the information to the court for in-camera review. They should also submit any proposed redactions. After considering defendants' response, I will instruct defendants on how to produce the information to Alexander.

Fourth, in interrogatories no. 9 and 10, Alexander asks defendants to "compile information and data for a five-year period" of all WCI inmates who have been removed from their prison jobs and all inmates who have been removed from a food service department job and subsequently reassigned to the food service department. Dkt. 22, at 4. Defendants have refused (with the exception of the records regarding the other two inmates who were accused of conspiring with Alexander to steal items from the canteen). They argue that this request is

"overly broad and unduly burdensome." Dkt. 22-1, at 7. They explain that to compile this information, they "would have to search the individual files of thousands of inmates," which are stored in two different locations. Dkt. 26, ¶ 7. Even compiling the information for a one-year period "would be an arduous task," they say, because there are hundreds of DOC-1408 forms completed each month. *Id.* ¶ 8.

The "burden or expense of the proposed discovery" is a factor to consider when deciding whether to order production of discovery. Fed. R. Civ. P. 26(b)(1). It must be weighed against the "likely benefit" of the discovery to the party requesting it. *Id.* Here, any record showing that an inmate was removed from his prison job would support an inference that Alexander was not treated any differently, which would undermine Alexander's claims. (Records showing that an inmate *wasn't* removed from his prion job might support Alexander's claims, but Alexander hasn't requested such records, and it's not clear that they exist.) So the likely benefit of this discovery to Alexander is low and outweighed by the burden of compiling and producing it. I will deny Alexander's motion to compel the production of records of inmates removed from their prison jobs.

Fifth, in interrogatory no. 11, Alexander seeks defendants' disciplinary records. Defendants have explained that Meli has no disciplinary records and that Immerfall has no disciplinary records relevant to Alexander's claims. But defendants allowed Alexander to review parts of Immerfall's record concerning discipline Immerfall received for failing to comply with a procedure, and discipline he received for interacting with another inmate. They have filed Immerfall's complete disciplinary record ex parte so that I may review it and determine whether any additional portions are discoverable. I have done so. I agree that the records are not relevant to the merits of Alexander's claims, so I will deny Alexander's motion to compel these records.

But as defendants concede, the records may be relevant to Immerfall's credibility, so if Alexander's claims survive summary judgment and head to trial, Alexander may renew his request for these records.

ORDER

IT IS ORDERED that:

1. Plaintiff Stephen E. Alexander's motion to compel defendants' discovery responses, Dkt. 22, is GRANTED in part.

2. By July 19, 2018, defendants must disclose to plaintiff the identity of the second individual who signed the DOC-1408 form, Dkt. 24-1, and explain that individual's role in the decision-making process.

3. By July 19, 2018, defendants must file with the court a proposed method for allowing plaintiff to review the information and records responsive to plaintiff's interrogatory no. 6 without compromising the Waupun Correctional Institution's security. They must file the discovery at issue in camera, and they must file any proposed redactions.

Entered July 5, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge