IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEPHEN E. ALEXANDER,

                Plaintiff,

v.

TONI MELI and KEITH IMMERFALL,

                Defendants.

OPINION and ORDER

17-cv-585-jdp

---

Pro se plaintiff Stephen E. Alexander, an inmate incarcerated at Waupun Correctional Institution (WCI), is proceeding on First Amendment retaliation claims and class-of-one equal protection claims against two WCI employees, Security Director Toni Meli and Lieutenant Keith Immerfall. Alexander alleges that Meli and Immerfall violated his rights by terminating him from his food-service job and reclassifying him to "voluntary unassigned" status to punish him for having successfully challenged a conduct report.

Defendants move for summary judgment. Dkt. 41. I will grant defendants' motion because Alexander fails to present evidence that defendants' actions were motivated by Alexander's protected activity, or that defendants singled him out for adverse treatment without a rational basis.

UNDISPUTED FACTS

The following facts are undisputed unless noted otherwise.

Alexander has been incarcerated at WCI since 2004. At various points over the course of his incarceration, including the period relevant here, Alexander was employed by WCI's food service department. In early 2017, Lieutenant Immerfall learned from WCI security staff that

some chocolate chip cream pies had gone missing from the canteen. Immerfall investigated the pies' disappearance. He identified April 18, 2017, as the date of the probable theft, and watched eight hours of surveillance footage from that day in an effort to identify the perpetrators. Based on that footage, Immerfall concluded that three inmates—Alexander, Toni Toston, and Charles Walker—had worked together to steal a box of pies from the WCI loading dock. On May 4, Immerfall issued Alexander, Toston, and Walker conduct reports. Alexander was charged with aiding and abetting (in violation of Wisconsin Administrative Code § DOC 303.06) and theft (in violation of Wisconsin Administrative Code § 303.37). He was found guilty on both charges. As a result of that guilty finding, Immerfall issued an Offender Work/Program/Placement (DOC-1408) form on May 8, terminating Alexander's food-service work assignment.

Alexander appealed the conduct report, asserting that he was not part of the theft and that the charges were inappropriate. In a decision dated May 24, 2017, the WCI warden ultimately agreed that the conduct report should be dismissed because of "inappropriate charges." Dkt. 44-4, at 1. The warden noted that the dismissal "does not negate the inmate behaviors." *Id.* Defendants say that, notwithstanding the dismissal of the conduct report on a technicality, Alexander was never deemed innocent of the conduct it described. Alexander suggests that the dismissal of the conduct report exonerated him of wrongdoing. *See* Dkt. 58, ¶ 29.

Although the conduct report had been dismissed, WCI staff continued to believe that Alexander had been involved in the pie theft. Defendant Meli, WCI's security director, deliberated about whether to allow Alexander to return to his food-service job. As part of those deliberations, Meli contacted a member of WCI's Gang Task Force to inquire whether

Alexander was still gang-affiliated. (Alexander admitted to being affiliated with the Gangster Disciples in 2002, but he says that he is no longer gang-involved. *See id.* ¶ 2.) The Gang Task Force member told Meli that Alexander was still active in the gang and that he had risen through the ranks to a leadership position.

Meli ultimately issued Alexander a new DOC-1408 form terminating Alexander's food-service job assignment on June 5, 2017. The parties dispute his basis for doing so. Defendants say that Meli based his termination decision on three factors: (1) his belief that Alexander was involved in the group theft; (2) his belief that Alexander continued to be gang-affiliated; and (3) his belief that Alexander had committed the misconduct in conjunction with at least one other gang member—in this case, Toni Toston. *Id.* ¶¶ 34–35. Based on these considerations, Meli believed that Alexander's continued employment in food service posed a security threat. Per Department of Adult Institutions (DAI) policy 309.00.01, an inmate's potential threat to a facility's security can be a basis for removing him from his work placement. *See* Dkt. 44-5. Alexander disputes that these were Meli's true reasons and contends that Meli was acting out of a desire to retaliate against Alexander for successfully contesting the conduct report. *See* Dkt. 58, ¶¶ 35–36.

After Alexander was removed from his food-service job, WCI security staff placed him on voluntary unassigned (or "UNAS") status. Per WCI rules, any time an inmate refuses, quits, or is "negatively removed" from a work or program assignment, he is placed on UNAS status for 90 days. *See* Dkt. 44-3, at 22; DAI Policy 309.55.01. Inmates in UNAS status are not paid an institution wage and are not allowed to attend library or structured recreation, or to participate in fine arts, hobby, music, or chapel studies time. They must remain in their cells except for visits, meals, cell hall recreation, and non-leisure-time passes. After an inmate has

3

been in UNAS status for 90 days, he may request that his status be changed to involuntary unassigned status, which is a paid status meant for inmates who are willing to accept any job assignment but who have not been assigned to a job.

Alexander complained that his placement in UNAS status was inappropriate and contrary to policy given the dismissal of his conduct report. The reviewing WCI official responded with the following explanation:

> After looking into your complaint I find that your removal from Food Service was an Administrative removal based on an incident that you were involved with that falls within the parameters of "negative activity." You are correct, your Conduct Report was dismissed but with the understanding that Conduct Reports can be dismissed for various reasons, the dismissal in your case does not automatically mean that you are innocent or that you were not involved.
>
> The point that you were Administratively removed from your position for negative activity is more of the deciding factor in your placement of UNAS status. In accordance with [DAI Policy] 309.55.01 section IV, "Inmates who refuse or are **negatively removed from a work** or primary program **shall be placed in voluntary unassigned status and shall not be compensated for a minimum of 90 days** unless already enrolled in a different program than the one in which the inmate refused or was negatively removed".
>
> Being that you were Administratively removed due to negative activity, your UNAS status is correct.

Dkt. 44-1, at 24 (emphasis in original). Alexander next filed an inmate complaint about his UNAS classification status, alleging that the institution had "chose[n] to retaliate against [him] for prevailing on appeal against [the conduct report], where Mr. Meli chose to repudiate [Alexander's] former assignment and instead place[d him] in [UNAS status]." Dkt. 44-1, at 11. That complaint and his subsequent appeals were all dismissed. Alexander then filed this lawsuit, asserting violations of his First and Fourteenth Amendment rights.

4

ANALYSIS

Defendants move for summary judgment on all of Alexander's claims. Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court must view the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Its role at summary judgment is not to "sift through the evidence, pondering the nuances and inconsistencies, and deciding who to believe," but rather to decide "whether, based on the evidence of record, there is any material dispute of fact that requires a trial." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (citations and internal quotation marks omitted). The court must grant summary judgment when no reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A.  **Retaliation claims**

Alexander alleges that defendants terminated him from his food-service job and placed him in UNAS status in retaliation for his First Amendment-protected activity—in this case, his successful challenge to the conduct report. To prevail on a First Amendment retaliation claim, Alexander must identify (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by the defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendant took the action he did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009). Here, the parties focus on the third element: they dispute whether a reasonable jury could conclude from

the evidence that the termination or reclassification decisions were motivated by Alexander's protected activity.

Defendants contend that no reasonable jury could find that Alexander's protected activity motivated any of defendants' actions. As to Immerfall, they are plainly correct. Meli made the decision to terminate Alexander from his food service job and place him on UNAS status on June 5, 2017. Dkt. 58, ¶ 31. Immerfall made a similar determination when he issued Alexander an earlier DOC-1408 form on May 8, but this decision pre-dated the warden's May 24 decision to dismiss the conduct report. So Immerfall couldn't have been motivated by Alexander's successful challenge. Alexander provides no evidence that Immerfall was somehow involved in Meli's termination decision, or that Immerfall took other adverse action against him after Alexander successfully got the conduct report dismissed. So Alexander's retaliation claim against Immerfall fails as a matter of law.

Alexander's claims against Meli present a marginally closer question. Alexander says that Meli terminated him from his food-service job less than two weeks after the dismissal of the conduct report, so the timing could suggest retaliation. And, according to Alexander, Meli's asserted reason for the termination is fabricated and pretextual. After all, officials at WCI had long believed that Alexander was gang-involved; but his gang involvement became disqualifying only after the conduct report was dismissed. To cap it off, Alexander says that both Toston and Walker got more favorable treatment than he did. But Alexander's arguments are not supported by evidence that would support a reasonable verdict.

1. **Evidence of pretext**

Alexander's contention that Meli's asserted rationale for the termination was pretextual is not supported by the evidence. Alexander notes that defendants rely on records of

6

Alexander's alleged gang involvement that long predate Meli's decision to terminate Alexander's food-service job, and posits that if Meli's concerns about Alexander's gang affiliation were authentic, WCI would never have permitted Alexander to work in food service in the first place.

But in his declaration, Meli explained that he "generally would not release an inmate from a job solely because of his gang affiliation." Dkt. 36, ¶ 5. Meli specifically noted, however, that "if the inmate commits a violation or engages in some type of misconduct through the course of his job, and that wrongdoing is committed with other gang members, then [he] will consider the gang affiliation when determining whether to terminate the inmate's employment." *Id.* That is what Meli says drove his decision-making here: Alexander's alleged involvement in a group theft incident with another purported gang member, in combination with his own alleged gang-involvement, led Meli to conclude that Alexander's continued employment in food service would pose a security threat.

### 2. Treatment of others similarly situated

Alexander's contention that the two other inmates implicated in the pie theft incident were treated more favorably than he was is also contradicted by the evidence. It is undisputed that, like Alexander, Walker and Toston received conduct reports and were terminated from their kitchen jobs following the alleged theft. Both Walker and Toston appealed their conduct reports. Walker's appeal was unsuccessful, *see* Dkt. 61-1, but Toston's conduct report was dismissed for the same reason as Alexander's. *See* Dkt. 61-2.

Alexander notes that Walker was later rehired by the food services department, which he says demonstrates that Alexander was singled out for adverse treatment as a result of his successful challenge to the conduct report. But this evidence does not help Alexander.

7

Alexander and Walker were both "negatively removed" from their food service jobs, which means that if Walker was eventually rehired in food services, it was because he re-applied after completing his 90-day stint in UNAS status. Alexander provides no evidence that he likewise re-applied for a job with food services, so the comparison to Walker says nothing about whether Alexander was singled out for retaliatory treatment.

Alexander notes that Toston was reassigned to a less restrictive, medium-security facility a few months after the theft incident, which he says further illustrates that he was singled out for retaliation. There is no evidence in the record about why Toston was transferred, let alone whether it had anything to do with the group theft incident. Regardless, this comparison does not help Alexander either, because Toston, like Alexander, successfully challenged his conduct report. If anything, this evidence undermines Alexander's retaliation claim, because it shows that, even though Toston succeeded in challenging a conduct report, Meli did not use it against him to prevent his transfer to a medium-security facility.

3. Timing

Ultimately, Alexander's retaliation theory boils down to timing: he engaged in First Amendment-protected activity, and less than two weeks later, he was terminated from his food-service job. But timing alone is not enough to show retaliation, especially under the facts here. Once Alexander prevailed on his appeal of the conduct report, Immerfall's initial DOC-1040 form (based on the conviction) no longer required Alexander's termination from his food-service job. But, after the conviction was set aside on a technicality, Meli was still entitled to consider whether Alexander's continued employment posed a security risk. Defendants have adduced evidence to show that Meli made a reasonable appraisal of that risk. Alexander has

not adduced evidence from which a reasonable jury could conclude that Meli's true motive was retaliation.

## B. Class-of-one equal protection claims

The theory underlying an ordinary equal protection claim is that the plaintiff was denied equal treatment because of his membership in an "identifiable group." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). Alexander does not suggest that he was terminated from his kitchen job or placed on UNAS status for that reason. Instead, he says that he was singled out for worse treatment than other prisoners, which is a "class-of-one" equal protection claim. *See D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

"The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783–84 (7th Cir. 2013) (citing *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). It is not yet clear whether such claims are cognizable in the prison context. Some courts have applied the rule articulated in *Engquist* to bar class-of-one claims challenging arbitrary treatment by prison officials as a matter of law. *See, e.g., Glassey v. Ryan*, No. CV1201490PHXPGRESW, 2016 WL6080672, at *4 (D. Ariz. Mar. 7, 2016) (collecting cases from various circuits). In *Engquist*, the Supreme Court held that government employees could not bring class-of-one claims challenging adverse employment actions because such actions by their nature "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." 553 U.S. at 605. Defendants contend that *Engquist* should bar Alexander's class-of-one claims here because the employment and discipline-related actions Alexander seeks to challenge are inherently discretionary. But

Alexander's claims fail for a more elementary reason, so I need not determine whether class-of-one claims are ultimately cognizable in this context to decide this case.

As I explained in my screening order in this case, Dkt. 12, at 5, to survive summary judgment on a class-of-one claim, the plaintiff must demonstrate at a minimum (1) that defendants intentionally treated him differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment. *Olech*, 528 U.S. 564. (There remains lingering uncertainty about whether a plaintiff is also required to prove that defendants had some illegitimate motive. *See Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 912 (7th Cir. 2012) (Wood, J., dissenting).) Here, Alexander fails to make the requisite showing under the first element, because the evidence shows that all three individuals thought to be implicated in the pie theft incident received identical punishments. Each was terminated from his food service job, and, per WCI policy, each was placed in UNAS status for 90 days. Alexander and Toston subsequently appealed their conduct reports and got them dismissed, but neither got his food-service job back as a result of the dismissal. Absent evidence that Alexander was singled out for adverse treatment, his class-of-one claims fail as a matter of law. I will therefore grant defendants summary judgment on Alexander's class-of-one equal protection claims.

ORDER

IT IS ORDERED that defendants Toni Meli and Keith Immerfall's motion for summary judgment Dkt. 41, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered February 22, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge